May it please the court, Kurt Hermanson on behalf of Mr. Ochoa. The bottom line in this case is that Mr. Ochoa was a broker, not a dealer of firearms. How do you distinguish between a broker and a dealer? Your Honor, the statute 922A122 seems to talk about dealing. A broker is not a dealer. That would come as a great surprise to anybody who works in securities and calls themselves a broker-dealer. Good point, Your Honor. The difference is, as the court pointed out, the statute itself. So we start in 1968 with 922A1, which says dealing in firearms. And in 1968, a dealer was defined as any person engaged in the business of selling firearms at wholesale or retail. Then in 1986, the statute was amended to further define and narrow, specifically amended to narrow the group of people who would fall under the ambit of a dealer. You concede that your client brokered the firearm sales here, is that correct? Yes. All right. So I guess I'm trying to figure out why our holding is King, United States v. King. It's a 2013 case. Why isn't that directly on point? And in that case, we said that 922A1A reaches persons who hold themselves out as a source of firearms. So why isn't that case dispositive here? So King is not dispositive because the facts are completely different from this case. How so? So King did not hold that you don't have to sell firearms. So in footnote 8, King notes that the statute doesn't require an actual sale of firearms. But King was first under a plain error review, and here the issue was preserved. I'm just looking at the language in King, and it says it seems to hold that there was sufficient evidence there that supported conviction under this very same statute, 922A1A, where the defendant held himself out as a firearms dealer. It's enough to prove that the accused has guns on hand or is ready and able to procure them for the purpose of selling them from time to time to such persons as might be accepted as customers or people who are wanting to get firearms. And if you look at the facts here, your client was very much holding himself out as somebody who could acquire firearms for who he thought were clients, which were really undercover agents. Sure, so he found sellers and put the buyer, the CI, together with sellers. And that's not a source? He didn't have guns on hand, unlike Mr. King, who purchased over 20 firearms, stored them in a storage locker, transported the firearms. Some of those firearms were missing, unaccounted for, so were probably sold. Tried to sell them to people and held himself out as a firearm dealer. He specifically incorporated as a firearm dealer and tried to sell guns, probably did sell guns because guns were missing. So unlike this case, Mr. King ordered guns, received guns, possessed guns, transported guns, disposed of guns, and attempted to sell guns. Here, Mr. Ochoa put together the CI with sellers. There was only one fact scenario where he temporarily handled any of the money or guns, and there was the CI and the seller, and he was there, and the seller gave him the gun and he immediately handed it right to the CI, and they exchanged money the same way. But at no time did he... Was Mr. Ochoa a but-for cause of the sale? So... I mean... Yes, so... And a broker-dealer can take your order for 1,000 shares of U.S. steel without having possession of them, right? And he's dealing with you. Yes, and a broker could be convicted under the statute if charged properly. In this case, the government chose not to charge him or proceed under the theory of either conspiracy or aiding and abetting. And that was their choice, and they're stuck with that choice. They very... The government argues that brokering a deal is dealing. Yes, so this... Now, why isn't that a pretty commonsensical position? The reason that argument fails is that in 1986, Congress specifically amended the statute to define what a dealer is. A dealer is a person who, one, devotes time, attention, and labor to dealing in firearms. So what does dealing mean? That goes back to the definition of what a dealer is. A dealer is someone who's engaged in the business of selling firearms, not brokering firearm sales, but selling them as a regular course of trade and business. Here, Mr. Ochoa was, you know, he's convicted of the heroin sales. He's basically putting together, you know, the CI and people who are selling guns and saying, you know, if you bless me. At one point, the CI blesses him with $100. He's not selling guns. At most, he's getting a tip or a commission. He is not selling them. You're saying that a person can't be engaged in the selling of an object unless he has title to it? No. Or possession of it? Possession is certainly a factor. I mean, those would be factors of the court would consider. What I'm arguing, Your Honor, is that under 922A21C, which Congress added in 1986, not only do you have to deal in firearms on a regular course of trade or business, you have to have the principle objective of livelihood and profit. Here, all he says is, you know, if you will bless me. He's asking for a tip. Are you saying that he was the source of the sale of the firearms out of a gratuitous nature that he possesses? Or, I mean, it's pretty obvious there was a principle motive of profit in this somewhere, whether it was cash or something else. There was a quid pro quo, wasn't there? There was never an agreement that he would get paid. There was. You mean in writing and signed? Well, even an oral agreement. There was testimony of. He only got four deals. Well, three to go through and one that doesn't. Yes, and there was an opinion that bless me means give him some money. But it's all cool, dog. You know, I'm not tripping, dog, if you'll bless me. So it's a request. It's not a deal. And then finally, 922A21C also provides that there must be repetitive purchase and resale of firearms. I see that I only have less than two minutes left, Mayor of the Reserve. Okay. Thank you. May it please the Court. Greg Scali for the United States. Good morning, Your Honors. The issue is pretty well framed. What's your best case that brokerage is dealing? Your Honor, the plain language of dealing incorporates the conduct committed by this particular defendant. So there's the plain language of the statute. There's also the structure, history, and purpose of the statute. The Gun Control Act of 1968. Let's deal with plain language. I'm much more comfortable with plain language than I am with purpose or legislative history or what really is going on. Let's talk about the language. What about the language of dealing encompasses brokerage? Well, Your Honor, as the Court noted and as counsel said, that dealing in firearms, the actus reus here that has to have occurred is dealing in firearms. And if one looks to the term dealer for what dealing means in 921A11, you'll find that it's any person engaged in the business of selling firearms. I would submit, Your Honor, that this defendant, who is constantly facilitating the movement of firearms on the black market by arranging the date, time, and location of transactions, by negotiating the price, by attending the sales of those firearms and overseeing their occurrence, and by sending his son off to try to get firearms for resale, this is a person that's engaged in the business of selling firearms. But he wasn't getting paid from the record here. I mean, he asked for this whole thing. In light of all of these transactions that you're talking about, he never got paid for any of them except for one where he asked to be blessed with, I think it was instead of eight bills that he would get it for seven bills and he'd get the rest. So when you say business, it sounds like a formalized sort of entity, you know, and there's nothing formal about this. I'm curious, why did the government not charge in aiding and abetting? I mean, is this your practice? Is this how you're proceeding in prosecuting these folks? Your Honor, the government could not have charged aiding and abetting or a conspiracy liability based on the unique facts of this case. In this case, there's one person and one person alone who's engaged in the regular course and trade of business of dealing in firearms, and that's defended in the motto of CHOA. Bird, Spooky, and Trofino, the ultimate sources of the firearms in each of the three deals, three to four deals, are all engaged in only those deals. So Bird is engaged in the first deal, Spooky is engaged in the second, and Trofino is engaged in the third and fourth. The government didn't have evidence here that any of those particular individuals was engaged in a regular course of trade or business with a profit motive. As a result, we could not have actually charged any. What's the profit motive here for Mr. Ochoa? Your Honor, the jury determined based on the evidence here. And what point to that evidence do you think is in the light most favorable to the government that supports that? For the profit motive. Your Honor, he's on video taking a $100 bill from the CI. One $100 bill? Yes, Your Honor. For all these transactions? Well, that's the only one that's actually captured on video. Was there reference to anything else? There's constant references to being blessed and why am I doing this because I'm going to get hooked up. All of that, viewing evidence most favorable to the government, easily makes out a profit motive for this particular defendant, Your Honor. So conspiracy liability would have required the government to show that Mr. Ochoa was agreeing with someone else to commit this crime, to engage in this regular course of business. Again, there's no one else who we can see was dealing without a license engaged in a regular course of business. Not Bird, not Spooky, not Trofino. Because in the evidence in this case, the government only had evidence of regular course of dealing by Mr. Ochoa. So what defendant wants is for the court to create a rule that if somebody engages in the conduct this defendant engaged in, he can't be prosecuted at all. Anytime the government doesn't have evidence that the source of the firearms is engaged in a regular course of trade or business with a profit motive, the government could not charge that person at all. Your Honor, with regard to the 1986 amendment, the purpose of that is very clearly to carve out a specific subset of actors from the reach of the statute. It is not to wipe out all the old opinions. As the court noted earlier, the King case cites that older test of the statute reaches those who hold themselves out as a source of firearms. And the district court here found very clearly that this defendant did hold himself out as a source of firearms. The defendant's brief in part, there's one little sort of almost, there's a portion that adds to the confusion here. The court in King, their actual quote of, and it appears that they're quoting the statute. They say, well, the statute defines engaged in the business as devoting time, attention, and labor to dealing in firearms as a regular course of trade and business. Well, the King case doesn't actually directly quote the statute. Instead, it quotes the comment to the model jury instruction. And it replaces the word dealing with the word selling. And so defendant, in his brief and his reply, lights upon that. And essentially the argument is, aha, selling is the key word. Well, it's not. It's not in the statute. And its source in the model jury instruction is the Breyer case from 1987, which doesn't have some sort of considered distinction between dealing and selling. But instead, it's just sort of an error in the language in the model jury instruction comment and in the King case. If this case, if the defendant's conduct in this case were found not to fall within the statute, a person would be free to engage in the conduct that this defendant engaged in without liability. So that includes exchanging a loaded gun for money on a residential street, conducting no background check on the buyer, designating no premises on which to conduct this, what is essentially a roving gun store, keeping no records of the disposition of all these firearms, and without keeping law enforcement apprised of the conduct, which is all required if you're a licensed dealer. This individual wants to sidestep all of that and continually and repeatedly facilitate the movement of guns on the black market without any liability. And that undermines the statute. Was the instruction given by the trial court concerning engaging in the business of dealing in firearms the one offered by the defendant? It was, Your Honor. And it was the model jury instruction of the circuit? That's correct. With an addition, I believe, from the judge as well that was beneficial, I think, to the government in the sense that it said you didn't have to actually be engaged in the actual sale of the firearm, right? Well, there was – oh, yes, that is correct. But was there any objection from the defendant to any of that? No, Your Honor. The jury instruction as given was actually – it was actually given as proposed by defendant. So the government had originally, I believe, submitted a different proposed jury instruction, I believe in accordance with the O'Malley pattern jury instruction. The jury instruction issue was – this was not addressed at the trial court level in relation to the jury instruction issue so much as it was the sufficiency of evidence. Certainly they preserved their motion to dismiss under Rule 29, but the jury instruction issue was not heavily litigated. The court has no further questions? No further questions. Thank you. Mr. Hudson. Your Honors, I believe my friend gives his office a little bit too – not enough credit. I think good prosecutors easily could have charged this as a conspiracy and charged Byrd and Spooky and Shapino and brought them in. And also the government has decided to stop the investigation and bring in a helicopter and confiscate the guns. Well, if you didn't object to the instruction the court gave and this whole thing is based on insufficiency of the evidence and the instruction talks about the kind of activity that the defendant must be engaged in, is this whole thing about whether your client had an intent to make a profit? Is that what this is all about? Or what are you saying was insufficient? Just one sale? I'm saying that under the statute, a broker is not a dealer and that there's no evidence that he met the definition of a – Let me put it to you. I can't tell if you're really challenging the evidence or the law here. I think your argument may be with Congress because the court gave the jury instruction that you requested, as Judge Keeley pointed out, and you didn't – I mean, why would you object to it? It was favorable, the instruction, to your client, correct? It's the one you wanted. Well, I wasn't the trial attorney, but – Well, whoever it was, do you see – do you acknowledge that? The instruction doesn't save this case from a Rule 29. So this court is presented with the issue of whether a broker – that he was just a broker, that he didn't make any sales. And so the question is, were his actions – was there sufficient evidence that he was a dealer? And you're saying in looking at it, we have to look at it in the light most favorable to the government and say the jury was wrong and that the actions that they heard about and the evidence was presented does not support the language here. Correct. This is a Jackson v. Virginia. May I put you a last question? Suppose a gun dealer on Sunset Boulevard – Hollywood Gun Shop used to be up there – takes consignments under contracts in which the title doesn't pass and agrees that possession is on behalf of the owner and sells on consignment and charges a commission. He's not a dealer? So a licensed dealer has requirements, and that's an excellent question because – Let's say he's not licensed, just a shop, and he takes consignments and sells guns. He's not a dealer? So you can – so I would refer the court to the two ATF rulings. It depends on the facts. You can receive a commission and not have to have a license if you're an auctioneer. So in a state-type auction, you do not – But if you take possession and have inventory like King, you evaluate and you tag the firearms in advance for the auction, then you do need a license. So there are different ways that the government can prosecute what happened in this case, but they chose the wrong statute and they should have done – and if they want to stick with this statute, they need aiding and abetting or conspiracy. His actions under the law, under correct interpretation, especially looking at 922A21C, he was not a dealer, and therefore there was insufficient evidence. Thank you very much. Thank you. Sorry we kept you over. The case of United States Bruce Ochoa will be submitted.
judges: Bea, Murguia, Keeley